**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:09-cv-1223-TWP-MJD |
| SIMPLY STORAGE MANAGEMENT, LLC and O.B. MANAGEMENT SERVICES, INC., | ) ) ) | |
| Defendants. | ) ) | |

**ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendants', O.B. Management Services, Inc. and Simply Storage Management, LLC's (collectively, "Simply Storage" or "Defendants"), Motion for Summary Judgment.  This dispute stems from Plaintiff, Equal Employment Opportunity Commission's ("EEOC" or "Plaintiff") allegations that Simply Storage allowed one of its male property managers, Terrence Lee Gordon ("Gordon"), to sexually harass five female employees ("Claimants") in violation of Title VII.  The parties agree on at least one fundamental fact: at summary judgment stage, the Court must assume the allegations against Gordon to be true and Gordon's actions were deplorable.  The Court readily concurs.  But for purposes of the instant Motion, the crucial question is limited to whether Simply Storage *can be held liable* for Gordon's unseemly conduct.  For the reasons set forth below, it cannot.  Simply Storage's Motion for Summary Judgment (Dkt. 64) is **GRANTED**.

## I.  BACKGROUND

**A.    Organizational Structure of Simply Storage**

Simply Storage manages self storage facilities in several states, including Indiana.  Simply Storage employs both property managers and associate property managers.  Property

1

managers are permanently assigned to most Simply Storage locations, whereas associate property managers float between locations to fill in as needed when a location is particularly busy or a property manager is not on duty. Property managers and associate property managers have essentially identical duties,[1] and neither has the authority to hire, fire, or discipline employees. Such personnel decisions rest with district managers in higher up positions, who oversee stores. Moreover, property managers and associate property managers do not supervise employees. Finally, property managers and associate property managers report directly to district managers.

**B.    Simply Storage District Managers and Regional Managers Relevant to This Dispute**

Three Simply Storage district managers are relevant to this dispute: Kevin Cleary, Les Swank, and Larry Woodruff. Kevin Cleary ("Cleary") was the district manager responsible for all Indiana stores from July 2005 until September 2007. Cleary saw each property manager in person four or five times per month. No employees ever complained to Cleary about sexual behavior or innuendo. From August 1, 2007 until August 27, 2008, Les Swank ("Swank") was the district manager responsible for all Simply Storage stores in Indiana and Owensboro, Kentucky. Swank testified that he had daily telephone and email contact with the property managers and associate property managers in his district, visited each store roughly one or two times per month, and periodically held meetings for all property managers and associate property managers. Until early September 2008, Swank never received any complaints specifically mentioning sexual harassment. He further testified that a sexual harassment complaint "needs to be handled with a top priority." On August 27, 2008, Larry Woodruff ("Woodruff") became district manager overseeing numerous Indiana stores. Thus, Swank and Woodruff shared district

---

[1]One Claimant, Tara Strahl, testified that property managers enjoy more "discretion" and could "waive fees."

2

manager duties in Central Indiana.  No employee ever complained to Woodruff specifically about sexual harassment.

In Simply Storage's organizational hierarchy, district managers report to regional managers or regional vice presidents.  On January 9, 2008, Tara Perry ("Perry") became the regional vice president in charge of Indiana, Ohio, and Kentucky and visited the Indiana stores numerous times during the year.

## C.    Simply Storage's Handbook and Policies

It is Simply Storage's practice to distribute an employee handbook ("Employee Handbook") to all property managers and associate property managers at the time of hire.  The Employee Handbook is also available at each Simply Storage location in a three-ring binder.  The Employee Handbook contains a "Zero Tolerance" policy designating infractions that would result in "immediate disciplinary action including termination."  The first section under the "Zero Tolerance" heading is titled "Harassment." It provides in relevant part:

> [Simply Storage] enforces a 'no tolerance' policy with respect to harassment or violence in the workplace.  The term harassment includes, but is not limited, to slurs, jokes, inappropriate comments and other verbal or physical conduct relating to a person's gender…that unreasonably interferes with a person's work performance or creates an intimidating, hostile work environment.
>
> Sexually harassing behavior in particular includes unwelcome conduct such as: sexual advances, requests for sexual favors, offensive touching, or other verbal or physical conduct of a sexual nature. Such conduct may constitute sexual harassment when it: is made an explicit or implicit condition of employment, is used as the basis for employment decisions, unreasonably interferes with an individual's work performance, creates an intimidating, hostile or offensive working environment.
>
> The types of conduct covered by this policy include, but are not limited to, demands or subtle pressures for sexual favors accompanied by a promise of favorable job treatment or a threat concerning employment.  Specifically, it also includes sexual behavior such as: repeated sexual flirtations, advances or propositions, continued and repeated verbal abuse of a sexual nature, sexually related comments and joking, graphic or degrading comments about an

employee's appearance, display of sexually suggestive objects or pictures.  This includes cartoons, vulgar e-mail messages, and internet images; any uninvited physical contact or touching, such as petting, pinching or repeated brushing against another's body.

Such conduct may constitute sexual harassment regardless of whether the conduct is between members of Management, between Management and staff employees, between staff employees, or directed at employees by non-employees conducting business with the company, regardless of gender or sexual orientation.

The "Zero Tolerance" policy also includes a subsection titled "Complaint Procedures and Investigation," which provides:

Any employee who believes he or she has been subject to sexual harassment or any other unlawful harassment or discrimination should promptly report the matter to any member of Management or the Director of Human Resources. [Simply Storage] will conduct a prompt investigation as confidentially as possible under the circumstances.  Employees who raise concerns and make reports in good faith can do so without fear of reprisal; at the same time, employees have an obligation to cooperate with the Company in enforcing this policy and investigating and remedying complaints.

Any employee who becomes aware of possible sexual harassment or other illegal discrimination against others should promptly advise any member of Management or Human Resources.  Anyone found to have engaged in such behavior will be subject to disciplinary action, up to and including termination.

Simply Storage revised the Employee Handbook modestly in 2008.  In late April or early May 2008, Simply Storage distributed the revised 2008 Employee Handbook to each of its stores.  Specifically, Swank testified that he distributed the handbook to his property managers and associate property managers and the employees signed a form acknowledging that they had received and reviewed the Employee Handbook.

According to EEOC, Simply Storage often required its employees to sign the acknowledgment *before* ever actually receiving the handbook.  Aside from distributing the

4

Employee Handbook, Simply Storage did not provide specific training on sexual harassment and did not specifically point out the policy provisions addressing sexual harassment.

**D.      Gordon's Tenure at Simply Storage**

Simply Storage hired Gordon as an associate property manager in 2005.  Prior to this decision, it is unclear if Simply Storage completed any sort of background check.  If it did, perhaps it would have learned that Gordon's previous employer, Blockbuster Video, had terminated him for sexual harassment.  Upon being hired, Gordon received an Employee Handbook.  In January 2006, Gordon became property manager of an Indiana location.  Gordon reported to Cleary from his start date until August 2007, when he began reporting to Swank.

Gordon often prepared work schedules for Indiana employees.  Specifically, Gordon would draft a work schedule for the property managers and associate property managers based on their preferred schedules and would then forward the proposed schedule to district managers for review and approval.  In mid-2006, Gordon began providing operational training to new property managers and associate property managers.  The new managers would shadow Gordon for anywhere from one day to two weeks to get acquainted with Simply Storage's practices and procedures.  Gordon was not responsible for reviewing employment policies with new property managers/associate property managers.  On September 8, 2008, Gordon was fired.

**E.      Claimants**

Gordon sexually harassed five Claimants: Joanelle Zupan ("Zupan"), Ellen Martin ("Martin"), Bunny Baker ("Baker"), Marilous Burkett ("Burkett"), and Tara Strahl ("Strahl") (collectively, "Claimants").  A brief review of each Claimant is instructive.

**1.      Zupan**

Zupan was hired by Simply Storage in 2007 as a property manager after Gordon

encouraged her to apply.  On May 1, 2007, during her orientation, Zupan signed a form acknowledging that she received and reviewed the Employee Handbook.  Zupan admitted that at some point during her employment, she saw the Employee Handbook.  On May 6, 2008, Zupan signed a second acknowledgment form confirming that she had received and reviewed the 2008 Employee Handbook.  Zupan also conceded that she knew how to contact her district manager; when she needed him, she called his cell phone.

On repeated occasions between her first day of employment and September 2008, Gordon subjected Zupan to sexual harassment.  However, Zupan did not immediately report the harassment.  On September 4 or 5, 2008,[2] Zupan lodged a complaint with Swank.  Since that day, Zupan has not experienced any sexual harassment.

### 2. Martin

In April 2007, Simply Storage hired Martin as an associate property manager.  During her orientation, Martin received and reviewed a copy of the Employee Handbook and received a list of telephone numbers for all stores in her district, her district manager, the regional vice president, members of human resources, and others.  Martin testified that if she had a human resources-related question, she should contact the regional human resources manager for Indiana, Latish Lawshea ("Lawshea").  In November 2007, Martin signed a form acknowledging that she received and reviewed the Employee Handbook and, in 2008, Martin signed another form acknowledging that she received and reviewed the revised Employee Handbook.

Gordon repeatedly harassed Martin from November 2007 to June 2008.  On occasion, Martin would threaten to report him to Swank, to which Gordon responded that Swank would not believe her.  Unfortunately, she never raised the issue with a district manager.  In June or

---

[2]The actual date that Zupan called Swank to complain is unclear.

July 2008, things apparently took a horrible turn.  Martin testified that Gordon raped her.[3]
Martin subsequently called Zupan to tell her about the incident.  During this conversation, Martin
and Zupan discussed telling Swank.  Ultimately, though, Martin told Zupan to keep the incident
a secret and Zupan complied.  During her deposition, Zupan expressed regret about keeping
Martin's secret, testifying that the "right thing to do" would have been to "[c]all the
police…[a]nd call my district manager…."  Zupan and Martin spoke for a second time about the
incident and discussed whether or not they should tell Swank.  Unfortunately, Martin never
reported any incidents of harassment to a district manager or the human resources department.
Martin has not experienced any sexual harassment since Zupan's early September report.

### 3.   Baker

In June 2008, Zupan encouraged Baker to apply for an open property manager position.
Baker interviewed with Swank, who offered her the position.  During orientation, Baker signed a
form acknowledging receipt of the Employee Handbook before actually receiving it.  Baker
testified that throughout her employment, she had access to the Employee Handbook as well as a
phone list with contact information for the other property managers, her district manager, and the
regional manager.  When she had a question about her taxes, Baker used the contact list to call
Lawshea in human resources.  Also, in emergency situations in which Baker could not contact
her district manager, she would contact the corporate office.  Baker alleges that Gordon sexually
harassed her on one occasion.  Baker told Zupan about the harassment on September 4, 2008 and
Zupan subsequently elevated the complaint to Swank.

### 4.   Burkett

Simply Storage hired Burkett who began working on June 30, 2008.  Burkett received the

---

[3]Gordon disputes this allegation.  Of course, Claimants' allegations are accepted as true for purposes of summary
judgment.

Employee Handbook, which she only had the opportunity to briefly glance at during orientation. Burkett signed a form acknowledging receiving and reviewing the Employee Handbook.  The month after she was hired, Burkett requested that an equal employment opportunity notice be posted in Simply Storage's Zionsville location.  Simply Storage provided the notice, which included information regarding workplace harassment.  Burkett knew that sexual harassment was against the law and, from prior employment, knew that it should be reported to supervisors or human resources.  Further, Burkett had access to a contact sheet for all property managers and district managers.  Between late July and September 2008, Gordon harassed Burkett.  She never reported the incidents to anyone at Simply Storage.[4]  Burkett never experienced harassment following Zupan's early September report.

### 5.      Strahl

Strahl began working as an associate property manager in October 2007.  On October 11, 2007, Strahl signed a form acknowledging that she received and reviewed the Employee Handbook.  Around February or March 2008, Strahl requested a copy of the Employee Handbook.  Strahl recalls reviewing the Employee Handbook during her employment, but not until she "actually asked for it."  Strahl testified that she assumed every workplace has a policy against sexual harassment because "[s]exual harassment isn't tolerated in the workplace at all." She testified that if a person wanted to make a complaint, a handbook would contain the proper reporting channels: "So I mean I would think that it would be in the handbook of who to go to if you had a complaint."  During her employment, Strahl had access to a contact list of her district manager's number, corporate numbers, and a human resources contact.  Strahl acknowledged

---

[4]The EEOC highlights that in August 2008, Woodruff saw Burkett at Gordon's facility.  According to Burkett, she was visibly shaken at the time.  Woodruff asked Burkett what she was doing there on her day off, and she responded that she was getting additional training from Gordon.  Woodruff thought this story was "bogus" but did not inquire further about her well-being.

that she had called Lawshea about payroll questions and conceded that if she had human resources concerns, she could call Lawshea.

Between October 2007 and September 2008, Gordon sexually harassed Strahl. At one point, another property manager, Joshua Salisbury ("Salisbury"), told Strahl that Gordon had asked him whether he had sex with Strahl. Naturally, this conversation upset Strahl and she spoke to property manager Jay Thieme ("Thieme") and Zupan about it. Strahl never experienced harassment following Zupan's early September report.

## F.    The Report

After Baker called Zupan about Gordon's harassment, Zupan "had enough" and decided to call Swank. Specifically, in early September (either the 4th or 5th) 2008, Zupan called Swank's cell phone to report numerous incidents of sexual harassment involving Gordon. Swank responded, "I don't want to hear no more. I'll handle it. I'll take care of it." On the night of September 5, 2008, Swank emailed his supervisor Perry, relaying Zupan's complaint. Both Swank and Perry testified that prior to this complaint, they were unaware of any issues involving Gordon and sexual harassment. In an email written to Perry and Lawshea on the morning of September 6, Swank offered to contact the female victims, but felt they may "be much more comfortable and more likely to give a full and complete statement regarding these sensitive sexual issues to a woman." Throughout September 6 and 7, 2008, Swank communicated with Perry and Lawshea, and they agreed that Lawshea should contact the victims and begin an investigation. Additionally, on September 6, 2008, Swank wrote another email to Perry and Lawshea stating the following:

> [Gordon] should not work tomorrow, or until this matter is fully resolved. If he has intimidated them into not telling me (or anyone) about this situation before, it is likely that the women will not want to write out a statement for fear of personal

retribution from [Gordon], unless they believe we as a company are serious about taking action on this.

Lawshea began investigating the allegations and discussed the complaints with Kristin Hilton, Simply Storage's vice president of human resources.  On Monday, September 8, 2008, Lawshea contacted Martin and Strahl, and attempted to contact Baker, to discuss the allegations. According to Lawshea, their statements were inconclusive.

## G.    Gordon's Discharge

Prior to Zupan's complaint, Gordon was already in trouble.  Swank had recently discovered that Gordon violated Indiana lien laws by selling the contents of a rental unit prior to auction and pocketing the proceeds.  In his initial email to Perry on September 5, 2008, Swank wrote that Gordon should be terminated immediately because Zupan's report was akin to "gasoline on the fire" of Gordon's "auction fiasco."  On September 8, 2008, Simply Storage terminated Gordon for violating state lien laws.

## H.    Miscellaneous Facts

Gordon was a serial harasser and the Claimants were not his only victims.  During the summer of 2007, Gordon grabbed property manager Sherri Fate ("Fate") by the arm and tried to pull her into a bathroom.  Fate shoved him away, told Gordon to keep his hands to himself, and called Swank, her district manager, to report the incident.   Fate testified that "there was a problem with [Gordon] and I needed to speak with [Swank] about it."  However, Swank did not give her a chance.  Before Fate explained what exactly happened, Swank cut her off stating that "he didn't have time [to hear about it]" and admonished her that she "needed to find a way to get along with [her] team workers if [she] wanted to continue to work for [Simply Storage]."  When asked if she knew what Gordon was trying to accomplish by pulling her in the bathroom, Fate

10

responded, "I don't know.  All I know is if somebody is trying to pull me in the bathroom, of an opposite sex, that's usually not a good sign."

Sometime between 2007 and Gordon's termination on September 8, 2008, a female customer who rented a storage unit at Gordon's facility complained to Swank that Gordon had walked up behind her and put his arm on her shoulder.  The customer told Swank that she thought Gordon was "creepy," "intimidating," and that she was uncomfortable around him. Swank responded by telling Gordon to stay away from the customer when she was on the premises and Gordon complied.

During her deposition, Lawshea, the human resources contact for the Simply Storage's Indiana district, stated that during her employment with Simply Storage, she was concerned about the lack of training and the adequacy of the complaint procedure.  Moreover, during Perry's deposition, she responded "I would say so" when asked if Simply Storage had a male-dominated culture.  Perry then opined that if a Simply Storage female employee complained about her treatment, she might be fired.  Additional facts are added below as needed.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007).  In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).  However, "[a] party who bears the burden of proof on a particular issue may not rest

11

on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). Finally, "neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

### III. DISCUSSION

Title VII bars sexual harassment in the workplace. *See Jackson v. County of Racine*, 474 F.3d 493, 499 (7th Cir. 2007). To prove a claim of sexual harassment, EEOC must establish three elements: (1) each of the Claimants was subjected to unwelcome sexual conduct, advances, or requests because of her sex; (2) the conduct was severe or pervasive enough to create a hostile work environment; and (3) there is a basis for Simply Storage's liability. *Lapka v. Chertoff*, 517 F.3d 974, 982 (7th Cir. 2008) (citation omitted). Simply Storage does not seriously dispute elements (1) and (2). Element (3), by contrast, is hotly contested.

Simply Storage's summary judgment argument is straightforward: it cannot be held liable because Gordon was Claimants' coworker and it took reasonable care to discover and remedy harassment, evidenced by the fact that it fired Gordon shortly after Zupan's complaint. To assess Simply Storage's argument, the Court must complete a two-part inquiry. First, the Court must determine whether Gordon was a supervisor or a coworker. Second, if Gordon was

merely a coworker, the Court must determine if Simply Storage took reasonable care to discover and remedy Gordon's sexual harassment.

**A.      Did Gordon "Supervise" Claimants Or Was He Just A Coworker?**

Gordon's employment status dictates the operative standard for liability.  Simply stated, harassment by supervisors is different than harassment by coworkers.  If the harassment comes from an employee's supervisor, then the employer is strictly liable, subject to the possibility of an affirmative defense. *Rhodes v. Ill. Dept. of Transp.*, 359 F.3d 498, 505 (7th Cir. 2004). Conversely, if the harassment was caused by a coworker, then an employer is only liable if the claimant can prove that the employer "has been negligent either in discovering or remedying the harassment." *Id.* at 505-06.

Although Title VII does not specifically define "supervisor," it is, for all intents and purposes, a legal term of art. *Rhodes*, 359 F.3d at 506.  The Seventh Circuit has fleshed out its meaning:

> Hence, it is manifest that the essence of supervisory status is the authority to affect the terms and conditions of the victim's employment. <u>This authority primarily consists of the power to hire, fire, demote, promote, transfer, or discipline an employee</u>. Absent an entrustment of at least some of this authority, an employee does not qualify as a supervisor for purposes of imputing liability to the employer.

*arkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1034 (7th Cir. 1998) (emphasis added). In other words, to be a supervisor, the harasser must have more than minimal authority to affect the terms and conditions of the victim's employment. *Id.* at 1035.

Gordon does not appear to fit perfectly into either the supervisor or the coworker mold. On one hand, Gordon was merely a property manager and he did not have authority to hire, fire, demote, promote, transfer, or discipline.  On the other hand, Gordon still wielded some authority. For instance, he provided input for personnel decisions (including hiring, firing, and performance

13

evaluations), conducted operational training for new employees, and helped set employees' work schedules. Moreover, Claimants thought that Gordon was the go-to person for non-major, day-to-day problems. On this point, Stahl testified: "So I just always assumed that it was – you know, that [Gordon] was a manager more than a property manager, that he was – like I would – I thought he was [Swank's] assistant."

After reviewing the relevant case law, the Court is convinced that Gordon does not qualify as a Title VII supervisor, even if he was not exactly a garden-variety property manager. Seventh Circuit law is clear that "the fact that an employer authorizes one employee to oversee aspects of another employee's job performance does not establish a Title VII supervisory relationship…[a]n individual is not a supervisor unless he possesses the authority to *directly* affect the terms and conditions of a victim's employment. *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 355 (7th Cir. 2002) (emphasis in original; citation omitted). Accordingly, the law is well-settled that an employee is not a Title VII supervisor simply because he provides input into managerial decisions and/or conducts some form of training. *See Parkins*, 163 F.3d at 1034 (not enough that harassing employee had input into firing decisions); *Hall*, 276 F.3d at 355 (not enough that employee had input into plaintiff's performance evaluations, trained plaintiff, and had authority to direct plaintiff's work).

EEOC argues that, in particular, Gordon's control over scheduling creates genuine issues of fact as to his supervisory role. This position is arguably backed by some authority. *See Gawley v. Indiana University*, 276 F.3d 301, 310 (7th Cir. 2001) ("a victim of harassment can walk away or tell the offender where to go when the harasser is a fellow employee, but few are willing to accept the risks of blowing the whistle on a supervisor, who has the power to hire and fire and to *set work schedules* and pay rates.") (emphasis added; citation and internal quotations

14

omitted).   While this argument has some appeal, the Court believes that EEOC's reliance on *Gawley* is misplaced for two reasons.   First, *Gawley* is distinguishable; it involved a clear line of demarcation between a higher-ranking lieutenant and a lower-ranking police officer.   Although the harasser was not the employee's immediate supervisor in the normal course of business, he had the ability to delay her receipt of critical equipment, had the ability to initiate disciplinary proceedings against her, and on two separate occasions, harassed her *while* directly acting as her commanding officer.   *Id.* at 310-11.   Moreover, in the department's paramilitary hierarchy, "subordinate officers were obliged to obey the commands of all superior officers, not just those who were in their direct line of supervision." *Id.*   Obviously, *Gawley* dealt with a clear power disparity that is not present in the instant circumstances.[5]

Second, Gordon was hardly vested with *carte blanche* to devise work schedules.   Instead, he would send the district manager a proposed schedule, and then the district manager would review and endorse it.   In fact, Gordon did not have authority to deny an employee's request for time off.   On this point, he testified, "I would never deny it.  I would always contact the district manager, and they would say yes or no."   At most, Gordon had marginal discretion and control over Claimants' minor work operations; this is insufficient as a matter of law to impute liability to Simply Storage under Title VII. *See Hall*, 276 F.3d at 355; *Rhodes*, 355 F.3d at 506 (harasser had insufficient authority to be considered a Title VII supervisor, even though he managed plaintiff's work assignments, investigated complaints and disputes, and made recommendations concerning sanctions for rule violations).   At bottom, Gordon, a property manager who reported to a district manager, did not have the authority to *directly* affect the terms and conditions of

[5]EEOC relies on numerous other cases, but they are all distinguishable for the same basic reason: in those cases, the harasser unmistakably outranked the plaintiff. *See, e.g., Doe v. Oberweis Dairy*, 456 F.3d 704, 717 (7th Cir. 2006) (shift supervisor had sufficient authority over teenage part-time ice-cream scooper to qualify as a supervisor under Title VII; he could direct her work, issue disciplinary write-ups, and if he recommended that an employee be fired, the employer would likely do so without an investigation).

15

Claimants' employment.  For this reason, Gordon does not qualify as a supervisor under Title VII.

**B.     Did Simply Storage Take Reasonable Care to Discover and Remedy Sexual Harassment?**

Because Gordon is a coworker, not a supervisor, Simply Storage is not strictly liable for his conduct.  Accordingly, EEOC must now point to competent evidence that Simply Storage was negligent either in discovering or remedying the harassment directed at Claimants. *Rhodes*, 355 F.3d at 506; *Hall*, 276 F.3d at 356 ("An employer's legal duty in co-employee harassment cases will be discharged if it takes reasonable steps to discover and rectify acts of sexual harassment by its employees.") (citation and internal quotations omitted).

EEOC's "failure to remedy" argument falls flat, given that Gordon was fired almost immediately after the sexual harassment complaints were made to a district manager. *See Hall*, 276 F.3d at 356. ("[Plaintiff] does not contend that [defendant] was negligent in remedying [her harassment]…nor could she given [the harasser's] rapid termination by the company.").  Zupan raised the issue of harassment with Swank on either September 4 or 5, 2008.  The night of September 5, 2008, the complaint was elevated and human resources was brought into the investigation.  By way of an email to Lawshea and Perry, Swank wrote that Gordon should be terminated and that Zupan's report was akin to "gasoline on the fire" of Gordon's "auction fiasco."  Gordon was discharged the following workday for violating state lien laws.  Even though Gordon was not technically terminated for harassment, this fact is of little import, given that Simply Storage was aware that any harassment would be resolved immediately and unequivocally upon Gordon's termination. *See Sutherland v. Wal-Mart Stores, Inc.*, ___ F.3d ___, 2011 WL 181487, at *3 (7th Cir. Jan. 21, 2011) ("But the steps [the employer] failed to take are *only relevant if* the steps it *actually took* were not reasonably likely to end the harassment.")

16

(emphasis added; citation omitted).  In sum, this is not a situation where the harassment just so happened to end fortuitously.

EEOC's "failure to discover" arguments demand a deeper analysis.  Under Title VII, an employer is neither required nor expected to "be aware of every impropriety committed by every low-level employee." *Hall*, 276 F.3d at 356 (citation omitted).   Therefore, "notice or knowledge of the harassment is a prerequisite for liability in coemployee harassment cases." *Id*. (citation and internal quotations omitted).  In assessing whether an employer had notice of sexual harassment, a court must first determine whether the employer designated a channel for complaints of harassment. *Id*. "Where an employer designates a 'point person' to accept complaints, this person becomes the natural channel for the making and forwarding of complaints, and complainants can be expected to utilize it in the normal case." *Id*. (citation and internal quotations omitted). Further, if a point person has not been identified, or is not easily accessible, "an employer can receive notice of harassment from a 'department head' or someone that the complainant reasonably believed was authorized to receive and forward (or respond to) a complaint of harassment." *Id*. (citation and internal quotations omitted).

Here, Simply Storage promulgated a channel for reporting sexual harassment.  In relevant part, Simply Storage's 2007 policy states, "Any employee who believes he or she has been subject to sexual harassment or any other unlawful harassment or discrimination should promptly report the matter to any member of Management or the Director of Human Resources."  This policy was distributed to its employees, who also received lists containing all relevant contacts. Even if Claimants failed to read the Employee Handbook, this would not materially strengthen their argument, given that all Claimants signed forms acknowledging receipt and review of the Employee Handbook containing the sexual harassment policy.  Under Seventh Circuit precedent

– *Shaw v. AutoZone, Inc.*, 180 F.3d 806 (7th Cir. 1999), *cert. den.*, 528 U.S. 1076 (2000) – this fact is significant.  In *Shaw*, the Court recognized:

> In this case, AutoZone adopted an antiharassment policy which it distributed to each of its employees. <u>While Shaw testified in her deposition that she had never seen AutoZone's sexual harassment policy, that is irrelevant </u>because it is undisputed that she received a copy of the policy and that she was required as a condition of her employment to read and comply with both the policy and the other terms contained in the Employee Handbook. She even signed an acknowledgment form stating "I understand it is my responsibility to read and learn the policies and procedures contained in the AutoZone Handbook and Safety Booklet." <u>Under these circumstances, even if Shaw did not have actual knowledge of the policy, she had constructive knowledge of the anti-harassment policy</u>.

*Id.* at 811 (emphasis added).  Here, at the very least, Claimants had similar constructive knowledge of the policy.

The policy aside, EEOC argues that Simply Storage effectively had knowledge of Gordon's actions prior to Zupan's September 2008 report.  As the Seventh Circuit has noted, "Generally, we do not consider an employer to be apprised of the harassment unless the employee makes a concerted effort to inform the employer that a problem exists.  However, we could charge an employer with constructive notice where the harassment is sufficiently obvious." *Rhodes*, 359 F.3d at 506-07 (citations and internal quotations omitted).  Moreover, "[w]ith respect to the extent of the notice given to an employer…a plaintiff cannot withstand summary judgment without presenting evidence that she gave the employer enough information to make a reasonable employer think there was some probability that she was being sexually harassed." *Hall*, 276 F.3d at 356 (citation and internal quotations omitted).

To bolster its position, EEOC trumpets six pieces of evidence: (1) an incident in which Woodruff observed that Burkett was visibly shaken at Gordon's facility but failed to inquire about her well-being; (2) Gordon's email to district managers commenting that he had driven by

18

Zupan's store; (3) property managers' complaints to one another about Gordon; (4) Gordon's prior termination from Blockbuster Video for harassment; (5) a female customer's complaint about Gordon; and (6) Fate's call to Swank in 2007.  Each piece of evidence is addressed in turn below.

Much of this evidence does little more than invite the Court to engage in speculation. First, with respect to the incident involving Burkett and Woodruff, Woodruff testified that Burkett was "dressed up" and told him that she had been visiting Gordon for additional training. Although Woodruff did not buy this explanation, he had no evidence whatsoever suggesting that Gordon was sexually harassing Burkett.[6]  Indeed, deducing that an employee had been sexually harassed simply because she was visibly upset would require a seismic inferential leap.

Second, in a chain of emails among property managers, Gordon wrote an innocuous email, stating that he had driven by Zupan's store and it looked like no one was working.  Swank was copied on this email.  Of course, nothing about this email would put a reasonable person on notice that Gordon was sexually harassing his coworkers.

Third, the complaints among property managers did not put Simply Storage on notice about Gordon's sexual harassment. *See Young v. Bayer Corp.*, 123 F.3d 672, 674 (7th Cir. 1997) ("the information must either (1) come to the attention of someone who (a) has under the terms of his employment, or (b) is reasonably believed to have, or (c) is reasonably charged by law with having, a duty to pass on the information to someone within the company who has the power to do something about it; or (2) come to the attention of such a someone.").  Again,

---

[6]EEOC also highlights an incident in which Burkett attempted to discuss Gordon with Woodruff, but Woodruff refused to talk about it.  The context of this evidence is important.  Burkett approached Woodruff *after* Zupan complained and "right before" he was terminated.  Woodruff declined to respond because Simply Storage was "in the process" of handling the incident.  In other words, Gordon was already on the chopping block at that time. Gordon's discharge followed shortly thereafter.

property managers and associate property managers were, for all intents and purposes, the low

employees on the totem pole and did not have supervisory authority.  Given that the Claimants

themselves were property managers/associate property managers, they had to know that their

complaints to similarly situated peers were not lodged with people who had a duty to react. *See*

*Parkins*, 163 F.3d at 1037 (complaint to individual who did not have authority to correct

harassment did not constitute notice).

Fourth, EEOC does not support its Blockbuster Video argument with any legal authority

suggesting that an employer can be put on actual or constructive notice by failing to investigate

the harasser's employment history.  Realistically, it would be speculative to infer that an inquiry

to Blockbuster would have unearthed meaningful information.[7]

The fifth and sixth pieces of evidence – the female customer's complaint and Fate's call –

are more substantive.  Nonetheless, the Court is convinced that they do not create genuine issues

of material fact.  A female customer thought that Gordon was "creepy" after he put his arm

around her.  Trusting her good intuition, the customer complained to Swank and requested that

Gordon not be the one who received her monthly payment.  Swank complied with this request.

From these circumstances, it may have been reasonable to infer that Gordon was emanating

"*creepy*" vibes.  But it would not be reasonable to infer that the customer's complaint put Simply

Storage on notice that Gordon was sexually harassing his coworkers. *See Sutherland*, 2011 WL

181487, at *3 (employer not liable for an instance of severe harassment merely because the

employer had notice of "one prior incident which may or may not rise to the level of actionable

harassment and which was not ignored by the employer.") (quoting *Longstreet v. Ill. Dep't of*

*Corr.*, 276 F.3d 379 (7th Cir. 2002)); *see also Bombaci v. Journal Community Pub. Group, Inc.*,

---

[7]EEOC learned of Gordon's past sexual harassment at Blockbuster through a federal subpoena.

482 F.3d 979, 985 n.2 (7th Cir. 2007) (rejecting argument that employer had notice because one manager witnessed harassers make sexual jokes and had to remove pictures of bikini-clad women that harassers had posted, and another manager learned that one harasser made inappropriate comments to employee's niece; "these isolated incidents were not sufficient to notify [manager] that [employee] was being sexually harassed because they did not come close to creating an actionable hostile work environment."); *McPherson v. City of Waukegan*, 379 F.3d 430, 441 (7th Cir. 2004) (holding that an employee's sexual comments, which were made to a group of female workers, were insufficient to notify the employer that the employee might commit serious acts of sexual harassment in the future because the comments did not create an actionable hostile work environment).

As for Fate, Swank cut her off before she had the opportunity to actually voice a complaint of sexual harassment.  To be sure, Swank's response displayed poor management skills and was less than compassionate, to put it charitably.  However, Fate's call did not put Simply Storage on notice that Gordon was sexually harassing his coworkers.  Fate herself did not consider the incident to be sexual or harassment. Moreover, the evidence suggests this was an isolated incident; there is no evidence that district managers purposefully adopted an "ostrich-like" posture and refused to listen to complaints from property managers.  To the contrary, district managers were in regular contact with property managers.  Significantly, Swank had daily telephone and email communications with associate property managers/property managers and saw each associate property manager/property manager in person at least once a month.  For this reason, the instance involving Fate was more akin to a miscommunication (albeit one caused by Swank) than a blind eye to harassment. *See, e.g., Bernier v. Morningstar, Inc.*, 495 F.3d 369, 375 (7th Cir. 2007) (employee's alleged referral to human resources official when he wished to

explain that he felt sexually harassed, and his subsequent alleged failure to locate such official, if proven, did not provide employer with constructive notice); *see also Episcopo v. General Motors Corp.*, 128 Fed. Appx. 519, 523 (7th Cir. 2005) ("We have held that one isolated incident is not enough to put a company on notice of a hostile work environment.").  No credible evidence exists to show that Simply Storage actually knew that sexual harassment was taking place or that the sexual harassment was so obvious that Simply Storage should have known that it was taking place.

Tellingly, when reports of sexual harassment were escalated to Swank in September 2008, an investigation ensued and Gordon was discharged one to two business days later. It is unfortunate for future employers who may investigate Gordon for employment purposes that Simply Storage chose to list the reason for termination solely as violating state lien laws and not for any harassment concerns.  Indisputably, however, the sexual harassment stopped immediately upon Zupan's report.   Overall, Claimants were sexually harassed by a coworker, not a supervisor.  And because Simply Storage had reporting mechanisms in place and discharged Gordon within one to two business days after being apprised of his behavior, Simply Storage cannot be held liable for Gordon's conduct.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, Simply Storage's Motion for Summary Judgment (Dkt. 64) is **GRANTED**.  A separate judgment will accompany this order.


SO ORDERED: 04/08/2011

*[signature]*

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

22

DISTRIBUTION:

Michelle Eisele
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
michelle.eisele@eeoc.gov

Daniel C. Emerson
BOSE MCKINNEY & EVANS, LLP
demerson@boselaw.com,clindsey@boselaw.com,kschuster@boselaw.com

Jo Ann Farnsworth
EEOC
joann.farnsworth@eeoc.gov,lectric.chandler@eeoc.gov

Robin M. Lybolt
US EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
robin.lybolt@eeoc.gov

Andrew M. McNeil
BOSE MCKINNEY & EVANS, LLP
amcneil@boselaw.com,mwyatt@boselaw.com,kschuster@boselaw.com

Emily L. Yates
BOSE MCKINNEY & EVANS, LLP
eyates@boselaw.com,rrichey@boselaw.com,kschuster@boselaw.com

Laurie A. Young
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
legal.station@eeoc.gov